# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
ROSEANN BIRRITTELLA,

                                 Plaintiff,

       -against-

SAFETY NATIONAL CASUALTY
CORPORATION, ACE PROPERTY AND CASUALTY
INSURANCE COMPANY and AMERICAN
INSURANCE COMPANY,

                               Defendants.

-----------------------------------------------------------------------X

*Filed 10/16/19*

**Index No.:** *160054/19*

Plaintiff designates New
York County as the place of
Trial.  The basis of venue is
the residence of Plaintiff
Roseann Birrittella.

**SUMMONS**

**To The Above-Named Defendants:**

      **YOU ARE SUMMONED** to answer the Complaint in this action and to serve a copy of

your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of

Appearance, on the plaintiff's attorneys within twenty (20) days after the service of this

Summons, exclusive of the day of service (or within thirty (30) days after the service is complete

if this Summons is not personally delivered to you within the State of New York); and in case

your failure to appear or answer, judgment will be taken against you by default for the relief

demanded in the Complaint.

Dated: New York, New York
      October 16, 2019

                             WARSHAW BURSTEIN, LLP

                     By: /s/ Alan M. Pollack
                         Alan M. Pollack
                         Thomas Filardo
                         575 Lexington Avenue
                         New York, New York  10022
                         (212)-984-7700
                         *Attorneys for Plaintiff Roseann Birrittella*

{1169639.1 }

1

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM

NYSCEF DOC. NO. 1

INDEX NO. 160054/2019

RECEIVED NYSCEF: 10/16/2019

To:

**Safety National Casualty Corporation**
*(Via the New York State Department of Financial Services)*

**ACE Property and Casualty Insurance Company**
*(Via the New York State Department of Financial Services)*

**American Insurance Company**
*(Via the New York State Department of Financial Services)*

**FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM**   INDEX NO. 160054/2019

NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 10/16/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
ROSEANN BIRRITTELLA,                        **Index No.:**

                           Plaintiff,          **COMPLAINT FOR**
        -against-                        **DECLARATORY**
                                     **JUDGMENT**

SAFETY NATIONAL CASUALTY
CORPORATION, ACE PROPERTY AND CASUALTY
INSURANCE COMPANY and AMERICAN
INSURANCE COMPANY,

                      Defendants.

-----------------------------------------------------------------------X

       Plaintiff, Roseann Birrittella ("Ms. Birrittella" or "Plaintiff"), by way of her Complaint

for Declaratory Judgment against defendants, Safety National Casualty Corporation ("SNCC"),

ACE Property and Casualty Insurance Company ("ACE") and American Insurance Company

("AIC") alleges as follows:

## NATURE OF THE ACTION

      1.     This declaratory judgment action arises from a related personal injury action

pending in the Supreme Court of the State of New York, New York County, entitled *Alaverdi v.*

*Bui, et al.*, Index No.: 159549/2017 (the "Underlying Action") in which Ms. Birrittella and her

employer, Ralph Lauren Corporation ("RLC" or the "Company") are named as defendants. Ms.

Birrittella brings the instant action against RLC's insurance carriers, SNCC, ACE and AIC, to

establish that, at all times relevant to the Underlying Action, she was an insured employee of

RLC who is covered under the following polices SNCC, ACE and/or AIC issued to the

Company:

        a)      SNCC Commercial Auto Liability policy, No. CAF4050829, effective May 10, 2017 to May 10, 2018 (the "Auto Policy");

        b)      SNCC Commercial General Liability policy, No. GL4050828, effective May 10, 2017 to May 10, 2018 (the "GL Policy"); and

        c)      Excess Umbrella Liability policy with ACE Property & Casualty Insurance Company under Policy No. G27983753002 for $25,000,000 per occurrence (the "Excess Policy") and a High Excess Liability Policy with American Insurance Company under Policy No. SHX 15283351, with limits of $25,000,000 each occurrence/aggregate (the "High Excess Policy").

      2.      As an employee of SNCC's named insured, RLC, Ms. Birrittella tendered her defense and indemnity for the Underlying Action to SNCC and demanded that SNCC notify the Company's excess carriers to whom coverage may be demanded.

      3.      In this action Ms. Birrittella seeks a declaration that at all relevant times in the Underlying Action: (1) she was an insured employee of RLC under the Auto Policy; (2) SNCC has a duty to defend her with respect to the Underlying Action under the Auto Policy; (3) SNCC has a duty to indemnify her with respect to the Underlying Action under the Auto Policy; (4) she was an insured employee of RLC under the GL Policy; (5) SNCC has a duty to defend her with respect to the Underlying Action under the GL Policy; (6) SNCC has a duty to indemnify her with respect to the Underlying Action under the GL Policy; (7) to the extent the SNCC Auto Policy and/or the SNCC GL Policy is/are exhausted, that ACE has a duty to defend and indemnify her in the Underlying Action pursuant to the Excess Policy; and (8) to the extent the Excess Policy is exhausted, that AIC has a duty to defend and indemnify her in the Underlying Action pursuant to the High Excess Policy.

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM          INDEX NO. 160054/2019
NYSCEF DOC. NO. 2                                         RECEIVED NYSCEF: 10/16/2019

## THE PARTIES

4.    Ms. Birrittella joined RLC in 1971 and was one of seven employees of the Company at that time.  She has been continuously employed by the Company for more than 48 years.  Through her hard work, creative talent, and unwavering loyalty to the Company, she became the Executive Vice President and Senior Creative Director for Ralph Lauren Women's Wear and Special Advisor to the Executive Chairman of the Company, Mr. Ralph Lauren, to whom she directly reports.

5.    At all times relevant to the Underlying Action, Ms. Birrittella's responsibilities as Senior Creative Director of Ralph Lauren Women's Wear and Special Advisor to Mr. Lauren included directing the Women's Wear design teams in both apparel and accessories from design inception through execution and presentation to consumers.  Her further responsibilities included, among other things, organizing fashion shows, creating advertising campaigns, arranging and attending photography sessions with Mr. Ralph Lauren, and developing all aspects of the Company's watch, jewelry, and fragrance businesses.

6.    Due to the all-consuming scope and creative importance of Ms. Birrittella's duties and responsibilities, the Company believed that it was in the Company's best interest to provide Ms. Birrittella with a driver and transportation that would be available on an "as needed basis" in order for her to perform her job.  In 2003, the Company hired Mr. Huey Bui ("Bui") as Ms. Birrittella's driver.

7.    At all times relevant to the Underlying Action, Ms. Birrittella's work-day typically consisted of being picked up at her home in Tribeca by Bui, being transported to 550 Seventh Avenue (where RLC has its women's wear division) for fittings, design meetings and business meetings, thereafter being transported to the Company's main office at 650 Madison

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM          INDEX NO. 160054/2019
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 10/16/2019

Avenue, or vice versa depending on the scheduling of appointments, which could change based on Mr. Lauren's fluid and constantly changing schedule. In addition, Ms. Birrittella was frequently transported to the Company's stores and other design locations throughout the city. Sometimes Ms. Birrittella was transported by Bui to corporate "black-tie" evening events, airports for business travel and business conferences including shareholder meetings and other company sponsored events. After her daily activities and evening events were completed, Bui would drive Ms. Birrittella back to her residence.

8.      After Ms. Birrittella was picked-up in the morning at her home by Bui, throughout the day when Bui would drive her to various business meetings, and when Bui would drive her home at the end of the day, Ms. Birrittella routinely performed work for the Company in the car. Specifically, she would read and answer business e-mails and texts, make and receive business calls on her cell phone and read trade papers, magazines, internal memos, and other business-related documents. While being driven by Bui, Ms. Birrittella would also transport garment bags of clothing and accessories that were being used for the design of the Company's products. While being transported to various meetings during the course of the day by Bui, other RLC employees would frequently accompany Ms. Birrittella and would also be driven by Bui. When Ms. Birrittella would arrive at or leave from a RLC office, someone from the Company's "Asset Protection Department" (i.e., security) would escort her in and out of the vehicle Bui was driving.

9.      The fact that the Company provided Ms. Birrittella with the use of a vehicle and driver each day from when she was picked up at her residence, throughout her work-day and to transport her home at night, together with the security protection she received from the Company's Asset Protection Department, underscores that, at all times relevant to the

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM    INDEX NO. 160054/2019

NYSCEF DOC. NO. 2                                           RECEIVED NYSCEF: 10/16/2019

Underlying Action, her "work-day" extended from the time when she was picked up in the

morning, until the time she arrived back at her home in the evening.

     10.     Upon information and belief, defendant SNCC is a Missouri corporation engaged

in the insurance business with a principal place of business in St. Louis, Missouri. SNCC is

authorized to engage in the business of insurance in the State of New York.

     11.     Upon information and belief, defendant ACE is a Pennsylvania corporation

engaged in the insurance business with a principal place of business in Philadelphia,

Pennsylvania. ACE is authorized to engage in the business of insurance in the State of New

York.

     12.     Upon information and belief, defendant AIC is an Ohio corporation engaged in

the insurance business with a principal place of business in Chicago, Illinois. AIC is authorized

to engage in the business of insurance in the State of New York.

## JURISDICTION AND VENUE

     13.     This Court has jurisdiction under CPLR § 3001, which provides for exclusive

jurisdiction over declaratory judgment proceedings. An actual controversy exists among the

parties to this action pertaining to the interpretation of the terms and conditions of the insurance

policies issued by SNCC, ACE and AIC.

     14.     This Court has personal jurisdiction over SNCC, ACE and AIC pursuant to CPLR

Sections 301 and 302.

     15.     This Court has jurisdiction over Ms. Birrittella, who is a resident of the State and

County of New York.

     16.     Venue lies in the Supreme Court of New York, County of New York, under

CPLR Section 503(a) as at least one of the parties resides in the County of New York.

{1161563.10 }                5

## THE UNDERLYING AND RELATED ACTION

17.     The plaintiff in the Underlying Action, Loura Alaverdi, alleges (through her guardian) that on July 20, 2017 at approximately 4:40 p.m. she was walking southbound on Madison Avenue near 64th Street (in Manhattan) when she was violently struck by an SUV being driven by Bui that ran onto the sidewalk while traveling approximately 50 miles per hour. Ms. Alaverdi further alleges that this accident was caused by Bui losing control of the vehicle due to a seizure he experienced that was caused by his injecting himself with more than 10 times the recommended dosage of Tramadol while also snorting cocaine approximately an hour before the accident occurred.

18.     It is alleged in the Underlying Action that Ms. Alaverdi, a mother of two minor children and a New York attorney, never regained consciousness as a result of this accident and remains comatose, in a vegetative state at NY Presbyterian Weil Cornell Medical Center.  It is further alleged in the Underlying Action that according to Ms. Alaverdi's physicians, her chances for recovery are virtually non-existent.

19.     At the time of the accident, Ms. Birrittella was a passenger in the back seat of the vehicle that was driven by Bui and owned by Jenny Ymoui Chev.  Ms. Birrittella suffered severe injuries including a concussion, fractured wrist, and contusions and lacerations to her face, right leg and sternum.  Shortly before the accident occurred, Bui had picked up Ms. Birrittella from RLC's offices at 650 Madison Avenue, New York, New York and was transporting her to her home in Tribeca.  When Ms. Birrittella was picked up by Bui on July 20, 2017, neither she, Ms. Mary Haas (who was Ms. Birrittella's executive assistant, was employed by the Company and regularly dealt with Bui's schedule), nor the individual from the Company's Asset Protection

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM
NYSCEF DOC. NO. 2

INDEX NO. 160054/2019
RECEIVED NYSCEF: 10/16/2019

Department, observed or suspected that Bui was incapable of safely operating the vehicle on that date.

20.     Bui was convicted of Vehicular Assault in the Second Degree, Vehicular Assault in the Third Degree and Driving While Impaired by the Use of Drugs and was incarcerated for the commission of these crimes.

21.     On October 27, 2017, Ms. Birrittella was served with a summons and complaint in the Underlying Action wherein she and RLC were sued for their alleged negligent hiring and retention of co-defendant Bui.

22.     The complaint in the Underlying Action has since been twice amended; with the first amended complaint served on January 8, 2018 and the second amended complaint served on or about June 28, 2019. A copy of the second supplemental summons together with the second amended verified complaint (the "Second Amended Complaint") is attached hereto as Exhibit A.

23.     The plaintiff in the Underlying Action seeks to hold Ms. Birrittella and RLC each vicariously liable for the alleged negligent acts of Bui, who plaintiff alleges was under their control.

24.     The Second Amended Complaint specifically alleges that:

- Ms. Birrittella had Bui drive a vehicle in furtherance of her duties as a Senior Executive at RLC from 2003 to 2017 (¶31);
- From 2003 to 2011, on behalf of RLC Ms. Birrittella entered into a contract with Bui to provide transportation for her to and from RLC corporate locations, pursuant to which Bui was paid directly by RLC for the benefit of Ms. Birrittella and RLC (¶¶32-34);
- After a company-wide change in its business expense reimbursement policy, beginning in 2011 RLC "grossed up" Ms. Birrittella's pay for the purpose of Ms. Birrittella making direct payments to Bui for the identical services provided between 2003 and 2011 (¶¶35-40);
- Such payments to Ms. Birrittella by RLC were premised solely on Bui providing driving services to Ms. Birrittella as Senior Executive Vice President of RLC (¶¶45-48);
- Bui continued to perform the same work of driving Ms. Birrittella and other RLC employees to various locations as required by the demands of her business as Executive Vice President of RLC, as well as the demands of RLC (¶¶40-49);

{1161563.10 }                          7

- Between 2011 and 2017, Ms. Birrittella acted as a highly compensated executive in furtherance of her duties for RLC in controlling, supervising, retaining and compensating Bui with respect to his duties as her driver on behalf of RLC, and the activity of being driven to and from her home and the Company's offices, and RLC locations was within the scope of her duties and employment for RLC (¶50).

25.     At all times relevant to the Underlying Action, Mary Haas was Ms. Birrittella's executive assistant and her duties included coordinating Ms. Birrittella's schedule with Bui. Through Ms. Haas, the Company was fully aware of where and when Bui was driving Ms. Birrittella in furtherance of and within the scope of Ms. Birrittella's duties with the Company.

26.     Prior to 2011, RLC paid Bui directly for his services as an ordinary business expense.

27.     In 2011 the Company changed its expense reimbursement policy for executives. Instead of the Company paying these drivers directly for their services, the Company "grossed-up" the salaries of their executives, like Ms. Birrittella, in an amount equal to the cost of the driver's salaries and the taxes the executives would be required to pay on the "phantom income" that they were receiving. The change in the Company's expense reimbursement policy did not modify in any manner Bui's duties and responsibilities, or the services that he performed for RLC and Ms. Birrittella on behalf of RLC.

28.     By "grossing up" Ms. Birrittella's compensation, the Company was indirectly continuing to pay Bui to provide transportation to Ms. Birrittella within the scope of her employment for the Company.

29.     When Bui was not available to transport Ms. Birrittella and she used a commercial taxi service, like Uber, the Company reimbursed her for the cost of the Uber, as an ordinary business expense.

{1161563.10}                                    8

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM

NYSCEF DOC. NO. 2

INDEX NO. 160054/2019

RECEIVED NYSCEF: 10/16/2019

30.     All decisions made by Ms. Birrittella concerning the retention of Bui as her driver were made by her as an employee of the Company and were well within the scope of her employment at RLC.

## THE INSURANCE POLICIES

### *The Auto Policy*

31.     The Auto Policy explicitly establishes that employees of RLC are insureds under the policy, and automobiles used by employees in connection with the Company's business are covered autos.  As stated by the policy:

### "BUSINESS AUTO COVERAGE FORM

Description of Covered Auto Designation Symbols . . . (8) only those 'autos" you lease, *hire*, rent or borrow . . . (9) Non-owned Autos Only., Only those 'autos' you do not own, lease, hire, rent or borrow *that are used in connection with your business.*  This includes 'autos' owned by your 'employees'…while used in your business or your personal affairs."

"Who is An Insured… The following are 'insureds'… b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow except (2) your 'employee' if the covered 'auto' is owned by that 'employee.'"

*See* Business Auto Coverage Form (emphasis added).

### "EMPLOYEES AS INSURED

The following is added to the Section II – Covered Autos Liability Coverage, Paragraph A.1 Who is An Insured provision:

Any employee of yours is an 'insured' while using a covered 'auto' you don't own, hire or borrow in your business or your personal affairs"

32.     The automobile that Bui drove to transport Ms. Birrittella from her office to her home on the date of the accident was a "covered auto" under the Auto Policy's Business Auto Coverage Form because it was either hired by RLC or used in connection with RLC's business. To the extent the automobile was hired by RLC, Ms. Birrittella is an insured because she was

{1161563.10 }                                   9

using it with RLC's permission and she did not own such automobile.  Alternatively, even if the automobile was not hired by RLC, because Ms. Birrittella was using it in connection with RLC's business, she is an insured RLC employee, who is entitled to coverage under the policy.

33.    The policy of insurance that was issued to RLC affords coverage to Ms. Birrittella as an employee of the Company in light of the fact that she was acting within the scope of her employment as an RLC employee, and with RLC's permission, during and throughout the period of time contained in each and every allegation in the Second Amended Complaint.  Any and all decisions regarding the retention of Bui were made within the scope of her employment as RLC's Executive Vice-President.  Moreover, Ms. Birrittella's transportation to and from work was consistently paid for and/or reimbursed by RLC, rendering this business-related travel, in service of the Company, that is covered under the at-issue policy.

### The GL Policy

34.    The GL Policy explicitly establishes that Ms. Birrittella, as an executive and employee of RLC, is an insured under the policy.  Section II – WHO IS AN INSURED, Section 1.(d.) provides that RLC's "'executive officers' and directors are insureds, but only with respect to their duties as [RLC] officers or directors."  The Second Amended Complaint alleges that Ms. Birrittella was engaged in her duties as an executive officer of the Company at the time of the accident.  In addition, Section 2.(a.) provides that RLC "'employees'" are insureds "…for acts within the scope of their employment by [RLC] or while performing duties related to the conduct of [RLC's] business."  Again, the Second Amended Complaint clearly alleges that at the time of the accident Ms. Birrittella was acting within the scope of her employment and/or while performing duties related to the conduct of RLC's business.

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM

NYSCEF DOC. NO. 2

INDEX NO. 160054/2019

RECEIVED NYSCEF: 10/16/2019

## THE TENDERS

35.     By letter dated May 23, 2019, Ms. Birrittella, as an employee of RLC, initially tendered her defense and indemnity in the Underlying Action to SNCC.  The tender letter contained a demand that SNCC notify the Company's excess carriers to whom coverage may be demanded.

36.     By letter dated June 13, 2019, SNCC declined to defend and indemnify Ms. Birrittella in connection with the Underlying Action.  By letter dated June 21, 2019, ACE denied coverage to Ms. Birrittella under the Excess Policy.

37.     Given that the Second Amended Complaint rendered SNCC's and ACE's purported grounds for denying coverage moot, by letter dated September 18, 2019, Ms. Birrittella re-tendered her defense and indemnity in the Underlying Action to SNCC.  This tender letter again demanded that SNCC notify the Company's excess carriers to whom coverage may be demanded.

38.     By letter dated October 10, 2019 (the "October 10 Declination"), SNCC modified its June 13, 2019 declination letter with respect to the Auto Policy only and agreed "in light of the allegations in the [Second Amended Complaint], to participate under the Auto Policy in Birrittella's defense in the Lawsuit, subject to a reservation of rights to decline coverage . . . ." SNCC's indication of "participation" in Ms. Birrittella's defense is, however, limited to "the sharing of . . . reasonable and necessary legal fees and expenses" and is subject to an express reservation of SNCC's "rights to limit or further limit its participation in Birrittella's defense, and to disclaim a duty to defend Birrittella and terminate its defense of Birrittella under the Auto Policy . . . ." In this same letter, SNCC has continued to decline "coverage to Birrittella under GL Policy in connection with the [Second Amended Complaint] in the Lawsuit."  A copy of the

October 10 Declination is attached hereto as Exhibit B. Citing SNCC's October 10 Declination, by letter dated October 15, 2019, ACE reiterated its prior denial of coverage to Birrittella under the Excess Policy. A copy of ACE's October 15, 2019 declination letter is attached hereto as Exhibit C.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment – Insured Status Under the Auto Policy)**

39.     Plaintiff repeats and re-alleges each and every allegation in Paragraphs 1 through 38 as if fully set forth herein.

40.     Under the terms of the Auto Policy, the Auto Policy affords coverage to Ms. Birrittella for the Underlying Action.

41.     SNCC, however, has reserved its rights to both defend and indemnify Ms. Birrittella "should [she] not qualify as an 'insured' on the Auto Policy."

42.     An actual case or controversy exists between Plaintiff and SNCC concerning Ms. Birrittella's status as an insured and her entitlement to defense and indemnity for the Underlying Action under the Auto Policy.

43.     A resolution of this dispute is necessary to resolve SNCC's obligation to defend and indemnify Ms. Birrittella for the Underlying Action.

44.     Plaintiff, therefore, seeks a judicial determination and declaration that she qualifies as an insured under the Auto Policy.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Declaratory Judgment – Duty to Defend Pursuant to the Auto Policy)**

45.     Plaintiff repeats and re-alleges each and every allegation in Paragraphs 1 through 44 as if fully set forth herein.

46.     Under the terms of the Auto Policy, SNCC has an obligation to defend Ms.

Birrittella in the Underlying Action.

47.     SNCC, however, has only agreed to "participate" in Ms. Birrittella's defense and

has reserved its "rights to limit or further limit its participation in Birrittella's defense, and to

disclaim a duty to defend Birrittella and terminate its defense of Birrittella under the Auto Policy

. . . ."

48.     An actual case or controversy exists between Plaintiff and SNCC concerning Ms.

Birrittella's entitlement to a defense in the Underlying Action under the Auto Policy.

49.     A resolution of this dispute is necessary to resolve SNCC's obligation to defend

Ms. Birrittella in the Underlying Action.

50.     Plaintiff, therefore, seeks a judicial determination and declaration that SNCC must

defend her in the Underlying Action.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Declaratory Judgment – Duty to Indemnify Pursuant to the Auto Policy)**

51.     Plaintiff repeats and re-alleges each and every allegation in Paragraphs 1 through

50 as if fully set forth herein.

52.     Pursuant to the terms of the Auto Policy, SNCC has an obligation to indemnify

Ms. Birrittella for the Underlying Action for all amounts for which she may become legally

obligated to pay as damages because of bodily injury in connection with the Underlying Action.

53.     SNCC, however, reserved its "right to decline to indemnify Birrittella under the

Auto Policy . . . should Birrittella not qualify as an 'insured' on the Auto Policy."

54.     An actual case or controversy exists between Plaintiff and SNCC regarding

SNCC's obligation to indemnify Ms. Birrittella in the Underlying Action.

{1161563.10}                              13

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM
NYSCEF DOC. NO. 2

INDEX NO. 160054/2019
RECEIVED NYSCEF: 10/16/2019

55.     A resolution of this dispute is necessary to resolve SNCC's obligation to indemnify Ms. Birrittella in the Underlying Action.

56.     Plaintiff, therefore, seeks a judicial determination and declaration that SNCC must indemnify her for the Underlying Action.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Declaratory Judgment – Insured Status Under the GL Policy)**

57.     Plaintiff repeats and re-alleges each and every allegation in Paragraphs 1 through 56 as if fully set forth herein.

58.     Under the terms of the GL Policy, the GL Policy affords coverage to Ms. Birrittella for the Underlying Action.

59.     SNCC, however, has denied coverage to Ms. Birrittella, asserting that she is not an insured under the GL Policy or that coverage is excluded by an inapplicable "Auto Exclusion."

60.     An actual case or controversy exists between Plaintiff and SNCC concerning Ms. Birrittella's status as an insured and her entitlement to defense and indemnity for the Underlying Action under the GL Policy.

61.     A resolution of this dispute is necessary to resolve SNCC's obligation to defend and indemnify Ms. Birrittella for the Underlying Action.

62.     Plaintiff, therefore, seeks a judicial determination and declaration that she qualifies as an insured under the GL Policy.

## AS AND FOR A FIFTH CAUSE OF ACTION
**(Declaratory Judgment – Duty to Defend Pursuant to the GL Policy)**

63.     Plaintiff repeats and re-alleges each and every allegation in Paragraphs 1 through 62 as if fully set forth herein.

{1161563.10}                              14

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM
NYSCEF DOC. NO. 2

INDEX NO. 160054/2019
RECEIVED NYSCEF: 10/16/2019

64.     Under the terms of the GL Policy, SNCC has an obligation to defend Ms.
Birrittella in the Underlying Action.

65.     SNCC, however, has denied that it has a duty to defend Ms. Birrittella, asserting
that she does not qualify as an insured under the GL Policy or that coverage is excluded by an
inapplicable "Auto Exclusion."

66.     An actual case or controversy exists between Plaintiff and SNCC concerning Ms.
Birrittella's status as an insured and her entitlement to defense for the Underlying Action under
the GL Policy.

67.     A resolution of this dispute is necessary to resolve SNCC's obligation to defend
Ms. Birrittella for the Underlying Action.

68.     Plaintiff, therefore, seeks a judicial determination and declaration that SNCC must
defend her in the Underlying Action.

### AS AND FOR A SIXTH CAUSE OF ACTION
**(Declaratory Judgment – Duty to Indemnify Pursuant to the GL Policy)**

69.     Plaintiff repeats and re-alleges each and every allegation in Paragraphs 1 through
68 as if fully set forth herein.

70.     Pursuant to the terms of the GL Policy, SNCC has an obligation to indemnify Ms.
Birrittella for the Underlying Action for all amounts for which she may become legally obligated
to pay as damages because of bodily injury in connection with the Underlying Action.

71.     SNCC, however, has denied that it has a duty to indemnify Ms. Birrittella,
asserting that she does not qualify as an insured under the GL Policy or that coverage is excluded
by an inapplicable "Auto Exclusion."

72.     An actual case or controversy exists between Plaintiff and SNCC regarding
SNCC's obligation to indemnify Ms. Birrittella in the Underlying Action.

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM

NYSCEF DOC. NO. 2

INDEX NO. 160054/2019

RECEIVED NYSCEF: 10/16/2019

73.     A resolution of this dispute is necessary to resolve SNCC's obligation to indemnify Ms. Birrittella in the Underlying Action.

74.     Plaintiff, therefore, seeks a judicial determination and declaration that SNCC must indemnify her for the Underlying Action.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Declaratory Judgment – Duty to Defend and Indemnify Pursuant to the Excess Policy)

75.     Plaintiff repeats and re-alleges each and every allegation in Paragraphs 1 through 74 as if fully set forth herein.

76.     Under the terms of the Excess Policy, upon exhaustion of the Auto Policy and/or the GL Policy, the Excess Policy affords coverage to Ms. Birrittella for the Underlying Action.

77.     ACE, however, has denied coverage to Ms. Birrittella.

78.     An actual case or controversy exists between Plaintiff and ACE concerning Ms. Birrittella's status as an insured and her entitlement to defense and indemnity for the Underlying Action under the Excess Policy.

79.     A resolution of this dispute is necessary to resolve ACE's obligation to defend and indemnify Ms. Birrittella for the Underlying Action.

80.     Plaintiff, therefore, seeks a judicial determination and declaration that, to the extent the Auto Policy and/or the GL Policy is/are exhausted, that ACE has duty to defend and indemnify Ms. Birrittella in the Underlying Action pursuant to the Excess Policy.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Declaratory Judgment – Duty to Defend and Indemnify Pursuant to the High Excess Policy)

81.     Plaintiff repeats and re-alleges each and every allegation in Paragraphs 1 through 80 as if fully set forth herein.

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM
NYSCEF DOC. NO. 2

INDEX NO. 160054/2019
RECEIVED NYSCEF: 10/16/2019

82.     Under the terms of the High Excess Policy, upon exhaustion of the Excess Policy, the High Excess Policy affords coverage to Ms. Birrittella for the Underlying Action.

83.     AIC, however, has denied coverage to Ms. Birrittella.

84.     An actual case or controversy exists between Plaintiff and AIC concerning Ms. Birrittella's status as an insured and her entitlement to defense and indemnity for the Underlying Action under the High Excess Policy.

85.     A resolution of this dispute is necessary to resolve AIC's obligation to defend and indemnify Ms. Birrittella for the Underlying Action.

86.     Plaintiff, therefore, seeks a judicial determination and declaration that, to the extent the Excess Policy is exhausted, that AIC has duty to defend and indemnify Ms. Birrittella in the Underlying Action pursuant to the High Excess Policy.

Wherefore, Plaintiff respectfully requests that the Court enter a judgment:

1.     On the first cause of action, for a judgment declaring that Ms. Birrittella is an insured under the Auto Policy in connection with Underlying Action;

2.     On the second cause of action, for a judgment declaring that SNCC must defend Ms. Birrittella in the Underlying Action pursuant to the Auto Policy.

3.     On the third cause of action, for a judgment declaring that SNCC must indemnify Ms. Birrittella in the Underlying Action pursuant to the Auto Policy;

4.     On the fourth cause of action, for a judgment declaring that Ms. Birrittella is an insured under the GL Policy in connection with Underlying Action;

5.     On the fifth cause of action, for a judgment declaring that SNCC must defend Ms. Birrittella in the Underlying Action pursuant to the GL Policy;

6.     On the sixth cause of action, for a judgment declaring that SNCC must indemnify Ms. Birrittella in the Underlying Action pursuant to the GL Policy;

7.     On the seventh cause of action, for a judgment declaring that, to the extent the SNCC Auto Policy and/or the SNCC GL Policy is/are exhausted, that ACE has duty to defend and indemnify Ms. Birrittella in the Underlying Action pursuant to the Excess Policy;

{1161563.10 }                                       17

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM          INDEX NO. 160054/2019

NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 10/16/2019

8.    On the eighth cause of action, for a judgment declaring that, to the extent the Excess Policy is exhausted, that AIC has a duty to defend and indemnify Ms. Birrittella in the Underlying Action pursuant to the High Excess Policy; and

9.    For such other and further relief as the Court deems just and proper.

Dated: New York, New York
       October 16, 2019

                          WARSHAW BURSTEIN, LLP


                   By:    /s/ Alan M. Pollack
                          Alan M. Pollack
                          Thomas Filardo
                          575 Lexington Avenue
                          New York, New York  10022
                          (212)-984-7700
                          *Attorneys for Plaintiff Roseann Birrittella*

{1161563.10}                        18

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM
NYSCEF DOC. NO. 3

INDEX NO. 160054/2019
RECEIVED NYSCEF: 10/16/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
LOURA ALAVERDI, an Incapacitated Person,
by her Guardian, RUDYARD WHYTE, ESQ.,

Plaintiffs,

-against-

HUEY BUI, JENNY YMOUI CHEV,
ROSEANN BIRRITTELLA and
RALPH LAUREN CORPORATION,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
TO THE ABOVE-NAMED DEFENDANTS:

**Index No.:**     **159549/2017**
**Date Filed:**    **10/26/17**

Plaintiff designates
New York County as the
Place of Trial

The basis of venue is
residence of plaintiff
LOURA ALAVERDI

**SECOND
SUPPLEMENTAL
SUMMONS**

Plaintiff resides at
401 E. 60th Street, #8K
New York, NY 10022
COUNTY OF NEW YORK

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on Plaintiff's Attorneys within 20 days after the service of this summons, exclusive
of the day of service (or within 30 days after the service is complete if this summons is not
personally delivered to you within the State of New York); and in case of your failure to appear
or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated:  New York, New York
        June 26, 2019

By:

GODOSKY & GENTILE, P.C.
Attorneys for Plaintiff

ANTHONY P. GENTILE, ESQ.
100 Wall Street, Suite 1702
New York, New York 10005
212-742-9700

**Defendants' Address(es):**

HUEY BUI
c/o PICCIANO & SCAHILL, P.C.
1065 Stewart Avenue, Suite 210
Bethpage, New York 11714

JENNY YMOUI CHEV
c/o PICCIANO & SCAHILL, P.C.
1065 Stewart Avenue, Suite 210
Bethpage, New York 11714

ROSEANN BIRRITTELLA
c/o COZEN O'CONNOR
45 Broadway, 16th Floor
New York, New York 10006

RALPH LAUREN CORPORATION
c/o LEWIS, BRISBOIS, BISGAARD
77 Water Street, Suite 2100
New York, NY 10005

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
LOURA ALAVERDI, an Incapacitated Person,
by her Guardian, RUDYARD WHYTE, ESQ.,

                                        Plaintiffs,

        -against-

HUEY BUI, JENNY YMOUI CHEV,
ROSEANN BIRRITTELLA and
RALPH LAUREN CORPORATION,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**Index No.:    159549/2017**
**Date Filed:   10/26/2017**

**SECOND AMENDED**
**VERIFIED**
**COMPLAINT**

Plaintiffs, complaining of the defendants, by their attorneys, GODOSKY & GENTILE,

P.C., respectfully show to this Court and allege, as follows:

## AS AND FOR THE FIRST CAUSE OF ACTION AGAINST THE DEFENDATS

1.      That, by Order, dated August 27, 2018, of the Honorable Tanya R. Kennedy, Justice of the

        Supreme Court, County of New York, RUDYARD WHYTE, ESQ., of 55 Broadway, 23rd

        Floor, New York, New York 10006, was duly appointed Guardian of LOURA

        ALAVERDI, an Incapacitated Person. A copy of said Order is annexed hereto as Exhibit

        "A".

2.      That at all times mentioned herein, plaintiff LOURA ALAVERDI was and still is a resident

        of the County of New York, City and State of New York.

3.      That at all times mentioned herein, defendant HUEY BUI (hereinafter referred to as

        "defendant BUI") drove a certain 2009 Chevrolet motor vehicle bearing New York license

        plate registration number HBN2495 for the year 2017 with the permission and consent of

        the defendant CHEV (hereinafter referred to as the "defendants' vehicle").

1

4.    That at all times mentioned herein, defendant BUI operated the defendants' vehicle.

5.    That at all times mentioned herein, defendant BUI managed the defendants' vehicle.

6.    That at all times mentioned herein, defendant BUI maintained the defendants' vehicle.

7.    That at all times mentioned herein, defendant BUI controlled the defendants' vehicle.

8.    That on or about July 20, 2017, the defendant BUI, was impaired in driving the vehicle owned by the defendant CHEV while under the influence of drugs, specifically Tramadol and Cocaine.

9.    That on or about July 20, 2017, while under the influence of Tramadol and Cocaine, defendant BUI was driving, operating and controlling the defendants' vehicle and drove and operated said motor vehicle in such a negligent, reckless and careless manner that plaintiff LOURA ALAVERDI was caused to sustain the injuries and damages as aforesaid.

10.   That as a result of driving the CHEV vehicle under the influence of drugs, the defendant BUI did leave the street known as Madison Avenue and did strike the person of LAURA ALAVERDI, on the Eastern sidewalk of Madison Avenue, at or near 64th Street, in City and State of New York.

11.   That as a result of the aforesaid incident, the defendant BUI was indicted and tried in Supreme Court of the State of New York, County of New York, under indictment 3385-2017 for vehicular assault in the 2nd Degree, vehicular assault in the 3rd Degree and driving while impaired by the use of drugs.

12.   That on May 13, 2019, before Justice Felicia Mennin, the defendant BUI was convicted of Vehicular Assault in the 2nd Degree, Vehicular Assault in the 3rd Degree and Driving While Impaired By The Use of Drugs, in connection with the aforementioned accident which

2

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM
NYSCEF DOC. NO. 3

INDEX NO. 160054/2019
RECEIVED NYSCEF: 10/16/2019

occurred on July 20, 2017.

13. That by virtue of the Doctrine of Res Judicata it has been determined that defendant BUI was reckless and negligent as a matter of law and the defendant BUI is liable to the plaintiff LOURA ALAVERDI.

14. That at all times mentioned herein, defendant JENNY YMOUI CHEV (hereinafter referred to as "defendant CHEV") owned the defendants' vehicle.

15. That at all times mentioned herein, defendant CHEV operated the defendants' vehicle.

16. That at all times mentioned herein, defendant CHEV managed the defendants' vehicle.

17. That at all times mentioned herein, defendant CHEV maintained the defendants' vehicle.

18. That at all times mentioned herein, defendant CHEV controlled the defendants' vehicle.

19. That at all times herein mentioned, defendant BUI operated the defendants' vehicle with the knowledge, permission and consent, express and/or implied, of defendant CHEV.

20. That by virtue of section 388 of the Vehicle and Traffic Law and the criminal conviction of the defendant BUI on May 13, 2019, the defendant CHEV is liable to the plaintiff by operation of the Doctrine of Collateral Estoppel.

21. That at all times mentioned herein, defendant BUI was an employee of defendant ROSEANN BIRRITTELLA (hereinafter referred to as "defendant BIRRITTELLA").

22. That at all times mentioned herein, defendant BUI was an agent of defendant BIRRITTELLA.

23. That at all times mentioned herein, defendant BUI was a special employee of defendant BIRRITTELLA.

24. That all times mentioned herein, defendant BUI, as an agent, servant, special employee

3

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM

NYSCEF DOC. NO. 3

INDEX NO. 160054/2019

RECEIVED NYSCEF: 10/16/2019

and/or employee of defendant BIRRITTELLA, operated the defendants' vehicle in the scope of, in the course of and/or in furtherance of his employment with defendant BIRRITTELLA.

25.    That all times mentioned herein, defendant BUI, as an agent, servant, special employee and/or employee of defendant BIRRITTELLA and RALPH LAUREN CORP. (hereinafter referred to as "defendant RALPH LAUREN"), operated the defendants' vehicle in the scope of, in the course of and/or in furtherance of his contractual employment with defendant BIRRITTELLA and the defendant RALPH LAUREN.

26.    That at all times mentioned herein, defendant BUI operated the defendants' vehicle within the scope of his authority, actual, implied and/or apparent, as an agent for defendant BIRRITTELLA and for defendant RALPH LAUREN.

27.    That at all times mentioned herein, it was the duty of the defendant BIRRITTELLA to train, discipline, supervise, promulgate and put into effect appropriate rules applicable to the duties, activities and behaviors of defendant BUI while, as an agent, servant and/or employee of defendant BIRRITTELLA, operated the defendants' vehicle in the scope of, in the course of and/or in furtherance of his employment with defendant BIRRITTELLA.

28.    That the defendant BIRRITTELLA is vicariously liable/responsible for the acts of defendant BUI committed while, as an agent, servant, special employee and/or employee of defendant BIRRITTELLA, operated the defendants' vehicle in the scope of, in the course of and/or in furtherance of his employment with defendant BIRRITTELLA.

29.    That the defendant BIRRITTELLA was negligent in the hiring and retention of defendant BUI in that defendant BIRRITTELLA failed to carefully investigate and interview

4

Case 1:19-cv-10678-JSR Document 1-1 Filed 11/18/19 Page 28 of 59

defendant BUI to determine the unsuitability of his background and person for the job in which he was so employed.

30.   That the defendant BIRRITTELLA was negligent in failing to perform a criminal search of defendant BUI and/or to make reasonable inquiries into defendant BUI's criminal history.

31.   That the defendant BIRRITTELLA had the defendant BUI drive a vehicle in furtherance of her duties as a Senior Executive at RALPH LAUREN, from 2003 to 2017, continuously, on a regular, if not daily basis.

32.   That from 2003 to 2011, the defendant BIRRITTELLA on behalf of the defendant RALPH LAUREN, entered into a contract with the defendant BUI, wherein in the scope of the agreement, was to apply to "the requirements for car transportation services for BUFFY BIRRITTELLA for "routing and special Car transportation services to or from all Polo Ralph Lauren corporate locations, located in the New York City metropolitan area and in New Jersey as requested, or any other locations as requested".

33.   That the defendant BIRRITTELLA, between the years 2003 and 2011, did negotiate, sign and execute the written contract between the defendant BUI and the defendants BIRRITTELLA and RALPH LAUREN in her capacity as Executive Vice President of defendant RALPH LAUREN.

34.   That pursuant to that contract the defendant BUI was paid directly by RALPH LAUREN for the benefit of RALPH LAUREN and the defendant BIRRITTELLA a monthly amount that was increased over the years.

5

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM

NYSCEF DOC. NO. 3

INDEX NO. 160054/2019

RECEIVED NYSCEF: 10/16/2019

35.     That in 2011, the defendant RALPH LAUREN determined that the contract, previously described, was a perquisite for the benefit of the defendant BIRRITTELLA and requested a negotiated alteration in the agreement between the defendant BUI, the defendant BIRRITTELLA and the defendant RALPH LAUREN.

36.     As a result of said change, the defendant BIRRITTELLA made the monthly payments directly to the defendant BUI for the identical service that he provided between the years 2003 to 2011.

37.     In order to accomplish the alteration in payment, the defendant RALPH LAUREN "grossed up" additional payment to the defendant BIRRITTELLA, to include not only the monthly payment to the defendant BUI, but in addition, to compensate the defendant BIRRITTELLA for the income tax impact of that additional payment, resulting in an increase to the defendant BIRRITTELLA from the defendant RALPH LAUREN of an annual sum of $130,000.00.

38.     That said payment referred to in paragraph #37 above, was solely premised upon the defendant BUI providing driving services for the defendant BIRRITTELLA in her position as Senior Executive Vice President of the defendant RALPH LAUREN.

39.     That the defendant BIRRITTELLA continued to compensate the defendant BUI on a monthly basis and specifically referred to his monthly payments as "Salary".

40.     That the defendant BUI continued to perform the same work of driving the defendant BIRRITTELLA and other Ralph Lauren employees to various locations, as required by the demands of the business of defendant BIRRITTELLA in her capacity as the Executive

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM

NYSCEF DOC. NO. 3

INDEX NO. 160054/2019

RECEIVED NYSCEF: 10/16/2019

Vice President of Ralph Lauren Corp., as well as the demands of the defendant RALPH LAUREN.

41.    That the defendant RALPH LAUREN required of the defendant BIRRITTELLA to estimate the amount of usage of the defendant BUI for RALPH LAUREN purposes.

42.    That during the years 2011 through July 20, 2017, ninety percent (90%) of the driving done by the defendant BUI for the defendant BIRRITTELLA was on behalf of RALPH LAUREN.

43.    That in addition to the monthly compensation, the defendant BIRRITTELLA reimbursed the defendant BUI for parking tickets incurred on the business of RALPH LAUREN.

44.    That the defendant BIRRITTELLA by and through her executive assistant Mary Haas, controlled the schedule and tasks of the defendant BUI on a daily basis, by and through email and text communications.

45.    That at all times hereinafter mentioned the defendant BIRRITTELLA was a Senior Executive Vice President in charge of the women's division for the defendant RALPH LAUREN.

46.    That as a part of her duties and responsibilities to the defendant RALPH LAUREN the defendant BIRRITTELLA was required to travel between her home and multiple locations in the Metropolitan Area of the City of New York.

47.    That as a part of defendant BIRRITTELLA's duties and responsibilities as a Senior Executive Vice President of Ralph Lauren Corp., the defendant BIRRITTELLA was empowered to engage, hire, employ and control a driver for the purpose of driving her from

7

Case 1:19-cv-10678-JSR   Document 1-1   Filed 11/18/19   Page 31 of 59

her home to multiple locations of Ralph Lauren offices and retail stores, all of which was on the business of the defendant RALPH LAUREN.

48.    That at all times hereinafter mentioned the defendant BIRRITTELLA was compensated for the engagement of a driver, the defendant BUI, by defendant RALPH LAUREN, either by direct payment or as a perquisite in order to compensate the defendant BUI for driving services on behalf of both the defendant BIRRITTELLA and RALPH LAUREN.

49.    That in addition to driving the defendant BIRRITTELLA, between 2011 and July 20, 2017, the defendant BUI would drive other employees of RALPH LAUREN on business trips and other executives and members of the LAUREN family.

50.    That between 2011 and 2017, with regard to the defendant BUI, the defendant BIRRITTELLA acted as a highly compensated executive in furtherance of her duties for the defendant RALPH LAUREN in controlling, supervising, retaining and compensating the defendant BUI with regard to his duties as a driver for the defendant BIRRITTELLA on behalf of the defendant RALPH LAUREN.

51.    That on July 20, 2017, the defendant BIRRITTELLA was a passenger in the 2009 Chevrolet motor vehicle bearing New York license plate registration number HBN2495 for the year 2017, driven by the defendant BUI.

52.    That at that time, the defendant BIRRITTELLA was in control of the defendant BUI's conduct as a driver of that vehicle, in that the defendant BIRRITTELLA directed him through an employee of RALPH LAUREN where and when to pick her up and what route to take to her destination.

8

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM

NYSCEF DOC. NO. 3

INDEX NO. 160054/2019

RECEIVED NYSCEF: 10/16/2019

53.    That this activity, specifically being driven from RALPH LAUREN's offices to her home was determined, by the defendant BIRRITTELLA and the defendant RALPH LAUREN, to be within the scope of her duties and employment for RALPH LAUREN.

54.    That the defendant BIRRITTELLA and the defendant RALPH LAUREN had determined that the activities specifically alleged in paragraphs #47 and #48, to be within the scope of her employment and duties, continuously from 2003 to 2017.

55.    That at all times mentioned herein, defendant BUI was an employee of defendant RALPH LAUREN.

56.    That at all times mentioned herein, defendant RALPH LAUREN was and still is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

57.    That at all times mentioned herein, defendant RALPH LAUREN was and still is a domestic limited liability company duly organized and existing under and by virtue of the laws of the State of New York.

58.    That at all times mentioned herein, defendant RALPH LAUREN was a foreign corporation licensed to do business in the State of New York.

59.    That at all times mentioned herein, defendant RALPH LAUREN was a foreign corporation transacting business in the State of New York.

60.    That at all times mentioned herein, defendant RALPH LAUREN was a foreign corporation doing business in the State of New York.

61.    That at all times mentioned herein, defendant RALPH LAUREN, was and still is a New York general partnership.

62. That at all times mentioned herein, defendant RALPH LAUREN was and still is a New York limited partnership.

63. That at all times mentioned herein, defendant BUI was an agent of defendant RALPH LAUREN.

64. That at all times mentioned herein, defendant BUI was a special employee of defendant RALPH LAUREN.

65. That the defendant RALPH LAUREN caused allowed and permitted the defendant BUI to hold himself out to the public and to other employees of the defendant RALPH LAUREN to be an executive assistant of the defendant RALPH LAUREN.

66. That the defendant RALPH LAUREN caused allowed and permitted the defendant BUI to sign his name electronically, as being affiliated with Polo Ralph Lauren Corp.

67. That at all time hereinafter mentioned, the defendant RALPH LAUREN is vicariously liable for the acts and omissions of its Senior Executive, defendant ROSEANN BIRRITTELLA, who was acting within the scope of her authority with regard to employment, supervision and control of the defendant BUI.

68. That all times mentioned herein, defendant BUI, as an agent, servant, special employee, phantom employee/ad hoc employee of the defendant RALPH LAUREN and the defendant BIRRITTELLA, operated the defendants' vehicle in the scope of, in the course of and/or in furtherance of the business of both the defendant BIRRITTELLA and the defendant RALPH LAUREN.

69. That all times mentioned herein, defendant BUI, as an agent, servant, special employee and/or employee of defendant RALPH LAUREN, operated the defendants' vehicle in the

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM          INDEX NO. 160054/2019

NYSCEF DOC. NO. 3                                          RECEIVED NYSCEF: 10/16/2019

scope of, in the course of and/or in furtherance of his contractual employment with both the defendant BIRRITTELLA and the defendant RALPH LAUREN.

70.    That at all times mentioned herein, defendant BUI operated the defendants' vehicle within the scope of his authority, actual, implied and/or apparent, as agent for both the defendant BIRRITTELLA and the defendant RALPH LAUREN.

71.    That the defendant RALPH LAUREN is vicariously liable under the Master Servant Doctrine of the State of New York for the acts or omissions of the senior executive ROSEANN BIRITTELLA, who at all times was acting within the scope of her employment and authority, with regard to the supervision and control of the defendant BUI, at all times.

72.    That whether the defendant BUI was an employee, a special employee, and/or an ad hoc employee or an agent and/or an independent contractor, the defendants BIRRITTELLA and RALPH LAUREN, directly and by and through their employees exercised sufficient control over the defendant BUI to render them vicariously liable for his acts.

73.    That the defendant RALPH LAUREN was negligent in the hiring and retention of defendant BUI in that defendant RALPH LAUREN failed to carefully investigate and interview the defendant BUI to determine the unsuitability of his background and person for the job in which he was so employed.

74.    That the defendant RALPH LAUREN was negligent in failing to perform a criminal search of defendant BUI and/or to make reasonable inquiries into defendant BUI's criminal history.

11

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM

NYSCEF DOC. NO. 3

INDEX NO. 160054/2019

RECEIVED NYSCEF: 10/16/2019

75. That at all times mentioned herein, Madison Avenue at or near East 64th Street, in the County of New York, City and State of New York (hereinafter referred to as "the accident site"), was and still is a public thoroughfare.

76. That on or about July 20, 2017, plaintiff LOURA ALAVERDI was lawfully a pedestrian at the accident site.

77. That on or about July 20, 2017, defendant BUI was operating the defendants' vehicle at the accident site.

78. That at the aforesaid time and place, the defendants' vehicle was in contact with plaintiff LOURA ALAVERDI.

79. That at the aforesaid time and place, the defendants' vehicle was in collision with plaintiff LOURA ALAVERDI.

80. That at the aforesaid time and place, the defendants' vehicle struck plaintiff LOURA ALAVERDI.

81. That as a result of the aforementioned occurrence, plaintiff LOURA ALAVERDI sustained serious permanent personal injuries.

82. That by reason of the foregoing, plaintiff LOURA ALAVERDI sustained a serious injury as defined in Section 5102(d) of the Insurance Law of the State of New York and/or economic loss greater than basic economic loss, as defined in Section 5102(a) of the Insurance Law of the State of New York.

83. That the aforementioned occurrence and the injuries resulting therefrom were due to the carelessness, recklessness and negligence of the defendants herein in the ownership, operation, management, maintenance and control of the defendants' vehicle.

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM          INDEX NO. 160054/2019
NYSCEF DOC. NO. 3                                          RECEIVED NYSCEF: 10/16/2019

84.     The causes of action asserted herein are not subject to the provisions of Article 16 of the CPLR and/or come within one or more of the stated exceptions set forth in CPLR 1602.

85.     That as a result of the carelessness and negligence of the defendants as stated herein, plaintiff LOURA ALAVERDI sustained serious, severe and permanent injuries and disabilities; pain and suffering and loss of enjoyment of life; was rendered sick, sore, lame and disabled; sustained severe mental anguish, nervous shock, great physical pain and loss of enjoyment of life; was compelled to obtain medical treatment and will be compelled to undergo further medical treatment for an undetermined amount of time, and has been damaged accordingly in such amount as exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction, or such amount as may be determined by a Court and/or Jury.

86.     That the foregoing occurrence and resulting injuries to plaintiff LOURA ALAVERDI were caused solely by reason of the carelessness, recklessness, negligence, wanton and willful disregard on the part of the defendants, their agents, servants and/or employees, and without any negligence on the part of the plaintiff contributing thereto.

87.     That by reason of the foregoing, plaintiff LOURA ALAVERDI is entitled to compensatory and punitive damages due to defendants' negligent, reckless, wanton and willful conduct.

## AS AND FOR THE SECOND CAUSE OF ACTION AGAINST THE DEFENDATS ROSEANN BIRRITTELLA AND RALPH LAUREN CORP.

88.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint therein numbered "1" through "87" with the same force and effect as if more fully set forth at length herein.

13

89.     That during the years 2016 and 2017, the defendant BIRRITTELLA and the defendant
        RALPH LAUREN became aware of the defendant BUI's inability to perform his duties as
        a driver on behalf of both the defendant BIRRITTELLA and the defendant RALPH
        LAUREN.

90.     That the defendant BIRRITTELLA, prior to July 20, 2018, became aware that the
        defendant BUI was abusing drugs, which impaired his ability to perform his job as a driver.

91.     That approximately ten weeks prior to July 20, 2017, the defendant BIRRITTELLA
        terminated the defendant BUI and implored defendant BUI that he receives help for his
        drug abuse.

92.     That notwithstanding the obvious danger of allowing a driver whose ability to perform his
        duties as a driver was impaired by drug use, the defendant BIRRITTELLA continued to
        schedule and use BUI as a driver for the purpose of driving her in the streets of Manhattan
        in the City of New York in furtherance of her position as an executive of Ralph Lauren
        Corp.

93.     That at the same time as referred to in paragraph #31 above, i.e., April through July of
        2017, employees of the defendant RALPH LAUREN were aware of the termination of the
        defendant BUI, for his unreliable conduct performing his duties and drug use by and
        through emails sent to Mary Haas, executive assistant and employee of RALPH LAUREN.

94.     That at all times mentioned herein, it was the duty of the defendant RALPH LAUREN to
        train, discipline, supervise, promulgate and put into effect appropriate rules applicable to
        the duties, activities and behaviors of defendant BUI while, as an agent, servant, special
        employee and/or employee of defendant RALPH LAUREN, operated the defendants'

14

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM   INDEX NO. 160054/2019

NYSCEF DOC. NO. 3                                          RECEIVED NYSCEF: 10/16/2019

vehicle in the scope of, in the course of and/or in furtherance of his employment with defendant RALPH LAUREN.

95.    That the defendant RALPH LAUREN is vicariously liable/responsible for the acts of defendant BUI committed while, as an agent, servant and/or employee of defendant RALPH LAUREN, operated the defendants' vehicle in the scope of, in the course of and/or in furtherance of his employment with defendant RALPH LAUREN.

96.    That the defendant BIRRITTELLA had a duty to use reasonable care in the employment training and supervision of the defendant BUI to find out whether he was competent to do his work without danger or harm to others.

97.    That the defendant BIRRITTELLA and RALPH LAUREN knew or had reason to know that the defendant BUI was incompetent, had a disposition to use drugs, and the defendants failed to use reasonable care to correct or remove the defendant BUI from his duties as the driver of the vehicle on the streets of Manhattan in the City of New York.

98.    That the defendant BIRRITTELLA and RALPH LAUREN had knowledge of facts that would lead a reasonably prudent person to conduct an investigation which who had uncovered the "issues" and drug use of the defendant BUI.

**WHEREFORE**, plaintiff LOURA ALAVERDI, an Incapacitated Person, by her

~~Temporary~~ Guardian, RUDYARD WHYTE, ESQ., demands judgment against defendants HUEY BUI, JENNY YMOUI CHEV, ROSEANN BIRRITTELLA and RALPH LAUREN CORPORATION, in such amount as exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction, or such higher amount as may be determined by a Court and/or

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM        INDEX NO. 160054/2019

NYSCEF DOC. NO. 3                                        RECEIVED NYSCEF: 10/16/2019

jury, together with the interest, costs and disbursements of this action.

Dated: New York, New York
      June 26, 2019

                                       Yours etc.,

                                       ANTHONY P. GENTILE, ESQ.
                                       GODOSKY & GENTILE, P.C.
                                       Attorneys for Plaintiff
                                       100 Wall Street, Suite 1702
                                       New York, New York 10005
                                       212-742-9700

Case 1:19-cv-10678-JSR   Document 1-1   Filed 11/18/19   Page 40 of 59

## VERIFICATION

STATE OF NEW YORK          )
                          ) ss.:
COUNTY OF NEW YORK        )

**RUDYARD WHYTE, ESQ., as Guardian of LOURA ALAVERDI, an Incapacitated Person,** being duly sworn, deposes and says that he is the plaintiff in the within action, that he has read and knows the contents of the foregoing **Second Amended Complaint**, that the same is true to his own knowledge, except as to those matters therein stated to be upon information and belief, and that as to those matters he believes it to be true.

RUDYARD WHYTE, ESQ.

Sworn to before me this
26 day of June , 2019

Notary Public

Nadezhda Kravchenko
Commissioner of Deeds, City of New York
No. 5-1644
Cert. Filed in Richmond County
Commission Expires February 1, 20__

16

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM          INDEX NO. 160054/2019
NYSCEF DOC. NO: 3                                          RECEIVED NYSCEF: 10/16/2019

Year 20
Index No.

159549          17

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

LOURA ALAVERDI, an Incapacitated Person, by her Guardian, RUDYARD WHYTE, ESQ.,

                                                    Plaintiffs,

          -against-

HUEY BUI, JENNY YMOUI CHEV, ROSEANN BIRRITTELLA and RALPH LAUREN
CORPORATION,

                                          Defendants.

## SECOND SUPPLEMENTAL SUMMONS and SECOND AMENDED VERIFIED
## COMPLAINT



*Attorney for*                **GODOSKY & GENTILE**, P.C.
                              ATTORNEYS AT LAW
**Plaintiffs**                IOO WALL STREET, SUITE 1702
                              NEW YORK, NEW YORK 10005
                              (212) 742-9700

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State,
certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed
document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not
obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are
not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential
claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

*Dated:.........................................    Signature .........................................................................................................*

                              *Print Signer's Name.....................................................................................................*

*Service of a copy of the within*                                          *is hereby admitted.*

*Dated:*
                              ..........................................................................................................
                                          *Attorney(s) for*

## PLEASE TAKE NOTICE

☐ **NOTICE OF
ENTRY**
*that the within is a (certified) true copy of a
entered in the office of the clerk of the within-named Court on*                    *20*

☐ **NOTICE OF
SETTLEMENT**
*that an Order of which the within is a true copy will be presented for settlement to the
Hon.                                        , one of the judges of the within-named Court,
at
on                              20        , at                  M.*

*Dated:*

                                                    **GODOSKY & GENTILE**, P.C.
                                                    ATTORNEYS AT LAW
*Attorney for*
                                                    IOO WALL STREET, SUITE 1702
                                                    NEW YORK, NEW YORK 10005
*To:*                                               (212) 742-9700

*Attorney(s) for*

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM

NYSCEF DOC. NO. 4

INDEX NO. 160054/2019

RECEIVED NYSCEF: 10/16/2019

# EXHIBIT B

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM
NYSCEF DOC. NO. 4

INDEX NO. 160054/2019
RECEIVED NYSCEF: 10/16/2019



1832 Schuetz Road
St Louis, MO 63146-3540
Telephone (888) 995-5300
(314) 995-5300
Fax (314) 995-3897

October 10, 2019

**Via E-Mail and Certified Mail**
Alan M. Pollack, Esq.
Warshaw Burstein, LLP
575 Lexington Avenue
New York, NY 10022
Apollack@wbny.com

|  | | |
|---|---|---|
| Re: | Claim Number: | GL1001551224 |
|  | Named Insured: | Ralph Lauren Corporation |
|  | Claimant: | Loura Alaverdi |
|  | Lawsuit: | *Loura Alaverdi, an Incapacitated Person, by her Temporary Guardian, Penoeil Alaverdi v. Huey Bui, Jenny Ymoui Chev, Roseann Birrittella and Ralph Lauren Corporation* |
|  | Jurisdiction: | Supreme Court of the State of New York, County of New York |
|  | Date of Loss: | 07/20/2017 |
|  | Policies: | Commercial Auto Liability policy No. CAF4050829 |
|  |  | Commercial General Liability policy No. GL4050828 |

Dear Mr. Pollack:

As you know, Safety National Casualty Corporation ("Safety National") issued to Ralph Lauren Corporation ("RLC") a Commercial Auto Liability policy, No. CAF4050829 (the "Auto Policy"), as well as a Commercial General Liability policy, No. GL4050828 (the "GL Policy"), each of which was in effect from 05/10/2017 to 05/10/2018. (The Auto Policy and the GL Policy may be referred to hereafter collectively as the "Policies"). On September 18, 2019, you tendered the defense and indemnification of your client, Roseann Birrittella ("Birrittella"), to Safety National under the Policies in connection with the Second Amended Verified Complaint (the "SAC") in the lawsuit styled *Loura Alaverdi, an Incapacitated Person, by her Temporary Guardian, Penoeil Alaverdi v. Huey Bui, Jenny Ymoui Chev, Roseann Birrittella and Ralph Lauren Corporation*, Index No.: 159549/2017 (the "Lawsuit"), which is pending in the Supreme Court of the State of New York, County of New York.[1]

---

[1] Prior to the filing of the SAC, Birrittella's defense and indemnification in connection with the Lawsuit was tendered to Safety National under the Auto Policy, and Safety National responded to that tender by declining coverage.

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM   INDEX NO. 160054/2019
NYSCEF DOC. NO. 4                                                  RECEIVED NYSCEF: 10/16/2019

The purposes of this correspondence are twofold. First, this correspondence will confirm that Safety National hereby agrees, in light of the allegations in the SAC, to participate under the Auto Policy in Birrittella's defense in the Lawsuit, subject to a reservation of rights to decline coverage, as discussed more fully below.[2] This correspondence also is to advise that, for the reasons stated below, Safety National declines coverage to Birrittella under the GL Policy in connection with the SAC in the Lawsuit.

A conflict of interest exists between Birrittella and Safety National on account of one or more ground for reservation raised herein. Therefore, Birrittella is entitled to be defended in the Lawsuit by independent counsel,[3] commencing on the date the SAC was tendered to Safety National for a defense, i.e., September 18, 2019. Chubb currently is providing a defense to Birrittella through the law firm Cozen & O'Connor, and you advised that Birrittella is pleased with the services that have been provided by Cozen & O'Connor and that she wishes to continue with Cozen & O'Connor as her defense counsel. Accordingly, Safety National will contact Chubb to discuss Safety National and Chubb sharing Cozen & O'Connor's *reasonable and necessary* legal fees and expenses incurred on or after September 18, 2019 in the defense of Birrittella in the Lawsuit.[4]

Additionally, we understand you are considering tendering Birrittella's defense and indemnification to Geico- the insurer of the vehicle owned by co-defendant Jenny Chev ("Chev") and driven by co-defendant Huey Bui ("Bui") at the time of the accident. Please be advised that Safety National intends to tender Birrittella's defense to Geico.[5] If Geico accepts any tender of Birrittella's defense on a primary basis, Safety National anticipates that its defense obligation in regards to Birrittella would terminate. Safety National reserves it right to terminate, limit or further limit the defense provided pursuant to the reservation of rights stated herein should any other insurer agree to defend or participate in the defense of Birrittella.

## I. The SAC

We briefly summarize below some allegations in the SAC that may be pertinent to Safety National reserving its rights to decline coverage to Birrittella under the Auto Policy and/or its declination of coverage to Birrittella under the GL Policy. Please be assured that by so doing, Safety National does not intend to imply the allegations have any merit.

According to the SAC, at all times relevant, Bui operated a vehicle bearing New York license plate number HBN2495 (the "auto") with the knowledge, permission and consent of Chev. On July 20, 2017, Bui was driving, operating and controlling the auto in such a negligent, reckless and careless manner that Plaintiff Loura Alaverdi ("Alaverdi") was caused to sustain injuries and damages.

---

[2] On October 2, 2019, Safety National's coverage counsel, Julie Rubin, discussed with you that Safety National is agreeing, in light of the allegations in the SAC, to participate under the Auto Policy in Birrittella's defense in the Lawsuit, subject to a reservation of rights to decline coverage.

[3] Safety National's defense obligation is limited to the provision of a defense by a single firm.

[4] Safety National anticipates sharing Birrittella's reasonable and necessary defense costs with Chubb. However, should no insurer agree to defend Birrittella after September 18, 2019, Safety National will pay all of Birrittella's reasonable and necessary defense costs from September 18, 2019, while reserving its right to recoup from other insurers a portion or all of the defense costs it pays in defending Birrittella in the Lawsuit.

[5] Safety National does not have a copy of Chev's Geico policy. Should you have or come to obtain a copy of that policy, we ask that you please provide it to Safety National as soon as possible.

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM INDEX NO. 160054/2019

NYSCEF DOC. NO. 4 RECEIVED NYSCEF: 10/16/2019

The SAC alleges that, at all relevant times, Bui was an employee, agent and/or special employee of Birrittella and he operated the auto in the scope, furtherance and course of his employment with Birrittella. Bui purportedly also was an employee, agent and/or special employee of RLC, and RLC allegedly permitted Bui to hold himself out to the public to be an executive assistant to RLC. Bui, as an agent, servant, special employee and/or employee of Birrittella and RLC, allegedly operated the auto in the scope, furtherance and course of his employment with Birrittella and RLC. Furthermore, it is alleged that Bui operated the auto in the scope of his authority, actual, implied and/or apparent, as an agent for Birrittella and RLC.

Birrittella was a Senior Executive Vice President in charge of the women's division of RLC. The SAC alleges that, between 2011 and 2017, Birrittella acted as a highly compensated executive in furtherance of her duties for RLC in controlling, supervising, retaining and compensating Bui with regard to his duties as a driver for Birrittella on behalf of RLC. It purportedly was the duty of Birrittella to train, discipline, supervise, promulgate and put into effect rules applicable to the duties, activities and behaviors of Bui while he operated the auto in the course and/or furtherance of his employment with her. As part of her responsibilities as a Senior Executive Vice President of RLC, Birrittella allegedly was empowered to engage, hire, employ and control a driver to transport her from home to multiple locations of RLC offices and retail stores, all of which was on the business of RLC.

Moreover, Birrittella purportedly had Bui drive the auto in furtherance of her duties as a Senior Executive for RLC from 2003 to 2017. Birrittella, through her executive assistant Mary Haas, allegedly controlled the schedule and tasks of Bui on a daily basis. The SAC asserts that Birrittella was negligent in the hiring and retention of Bui. It also asserts that Birrittella is vicariously liable for the acts of Bui while he operated the auto in the scope, in the course and/or furtherance of his employment with her.

Furthermore, the SAC alleges that being driven from RLC's offices to her home was determined by Birrittella and RLC to be within the scope of Birrittella's duties and employment for RLC. On the date of the accident, Birrittella purportedly was in control of Bui's conduct as a driver of the auto, in that she allegedly directed him through a RLC employee where and when to pick her up and the route to take to her destination.

Additionally, the SAC asserts that RLC is vicariously liable for the acts and omission of its Senior Executive, Birrittella, who was acting in the scope of her authority with regard to the employment, supervision and control of Bui.

## II. Some Undisputed Facts

In their answer to the First Amended Verified Complaint, Bui and Chev admitted that Chev owned the auto. Additionally, Birrittella testified that, at the time of the accident, Bui was driving her to her apartment to pick things up. From her home, Bui was scheduled to drive Birrittella to a seaplane, which was to transport her to the Hamptons for a personal trip.

## III. The Policies

RLC is the Named Insured on the Policies. Quoted below are certain provisions of the Policies, but we refer you to the Policies for their complete terms, conditions, limitations, definitions and exclusions.

### A. The Auto Policy

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM   INDEX NO. 160054/2019

NYSCEF DOC. NO. 4                                                  RECEIVED NYSCEF: 10/16/2019

## BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages.  The following numerical symbols describe the "autos" that may be covered "autos".  The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

A.  Description Of Covered Auto Designation Symbols.

| Symbol | Description Of Covered Auto Designation Symbols |
|--------|------------------------------------------------|
| 1      | Any "Auto"                                     |
|        | ****                                           |

****

## SECTION II – COVERED AUTOS LIABILITY COVERAGE

A.  **Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

****

1. **Who Is An Insured**

   The following are "insureds":

   a.  You for any covered "auto".

   b.  Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

****

INDEX NO. 160054/2019
NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 10/16/2019

    **c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

****

## C. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

****

### SECTION IV – BUSINESS AUTO CONDITIONS

****

**5. Other Insurance**

    **a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. . . .

****

    **d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

****

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

    **1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

****

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM
NYSCEF DOC. NO. 4

INDEX NO. 160054/2019

RECEIVED NYSCEF: 10/16/2019

to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**\*\*\*\***

## COMMON POLICY CHANGE ENDORSEMENT

**\*\*\*\***

## CHANGE DESCRIPTION

At your request and as agreed to by us, your attached policy is hereby endorsed and amended as follows:

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

### Amended Other Insurance Clause

**5. Other Insurance**

For any covered "auto", whether owned or not owned, this Coverage Form is excess over any other collectible insurance. While a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is excess over other collectible insurance regardless of whether the vehicle is connected to a motor vehicle you own or do not own.

**\*\*\*\***

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEW YORK CHANGES IN BUSINESS AUTO AND MOTOR CARRIER COVERAGE FORMS

For a covered "auto" licensed or principally garaged in New York, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM    INDEX NO. 160054/2019

NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 10/16/2019

## A. Changes In Covered Autos Liability Coverage

1. The third paragraph of **A. Coverage** is replaced by the following:

   We have the right and duty to defend any "insured against a "suit" asking for such damages or a "covered pollution cost or expense", even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered "Autos" Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

   ****

6. If the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations is equal to or greater than $160,000 the **Limit Of Insurance** provision is changed by the following:

   **Limit Of Insurance** applies except that we will apply the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations to first provide the separate limits required by the New York Motor Vehicle Safety Responsibly Act for:

   a. "Bodily injury" not resulting in death of any one person caused by any one "accident";

   b. "Bodily injury" not resulting in death of two or more persons caused by any one "accident";

   c. "Bodily injury" resulting in death of any one person caused by any one "accident";

   d. "Bodily injury" resulting in death of two or more persons caused by any one "accident "; or

   e. "Property damage" in any one "accident".

   ****

3. Paragraph **d.** of the **Other Insurance** Condition in the Business Auto Coverage Form and Paragraph **h. Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   When this Coverage Form and any valid and collectible insurance under any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM   INDEX NO. 160054/2019

NYSCEF DOC. NO. 4                                                    RECEIVED NYSCEF: 10/16/2019

the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**\*\*\*\***

Furthermore, the Business Auto Declarations states, in relevant part, as follows:

**ITEM TWO**
**Schedule of Coverages and Covered Autos**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos section of the Business Auto Coverage Form next to the name of the coverage.**[6]

**\*\*\*\***

### EMPLOYEES AS INSUREDS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following is added to the **Section II – Covered Autos Liability Coverage,** Paragraph **A.1. Who is An Insured** provision:

Any "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.

**\*\*\*\***

### B. The GL Policy

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

---

[6] In the Auto Policy, a charge is shown for Covered Auto Liability Coverage in the premium column, and symbol "1" is listed for it in the Covered Autos column.

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM   INDEX NO. 160054/2019
NYSCEF DOC. NO. 4   RECEIVED NYSCEF: 10/16/2019

The word "insured" means any person or organization qualifying as such under Section **II** — Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** —Definitions.

## SECTION I — COVERAGES

## COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement[7]

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section **III** -Limits Of Insurance; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided- for under Supplementary Payments - Coverages **A** and **B.**

****

### 2. Exclusions

    This insurance does not apply to:

****

### g. Aircraft, Auto Or Watercraft

    "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

---

[7] Per the **NEW YORK CHANGES – COMMERCIAL GENERAL LIABILITY COVERAGE FORM** endorsement.

Case 1:19-cv-10678-JSR   Document 1-1   Filed 11/18/19   Page 52 of 59

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

> **(1)** A watercraft while ashore on premises you own or rent;

> **(2)** A watercraft you do not own that is:

>> **(a)** Less than 26 feet long; and

>> **(b)** Not being used to carry persons or property for a charge;

> **(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

> **(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

> **(5)** "Bodily injury" or "property damage" arising out of:

>> **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

>> **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

\*\*\*\*

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

\*\*\*\*

> **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\*\*\*\*

**2.** Each of the following is also an insured:

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM       INDEX NO. 160054/2019

NYSCEF DOC. NO. 4                                                                 RECEIVED NYSCEF: 10/16/2019

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, one of these "employees" or "volunteer workers" are insureds for:

****

## SECTION V – DEFINITIONS

****

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

****

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document."

****

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

****

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

****

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

****

## RESERVATION OF RIGHTS TO DECLINE COVERAGE UNDER THE AUTO POLICY

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM   INDEX NO. 160054/2019
NYSCEF DOC. NO. 4                       RECEIVED NYSCEF: 10/16/2019

The Auto Policy provides that Safety National has "no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' … to which this insurance does not apply." **NEW YORK CHANGES IN BUSINESS AUTO AND MOTOR CARRIER COVERAGE FORMS, A. Changes In Covered Autos Liability Coverage, 1. SECTION II – COVERED AUTOS LIABILITY COVERAGE, A. Coverage, 1. Who Is An Insured** provides that "insureds" on the Auto Policy are: RLC for any covered "auto"; with certain delineated exceptions, anyone else while using with RLC's permission a covered "auto" RLC owns, hires or borrows; and anyone liable for the conduct of an 'insured' described above but only to the extent of that liability. Furthermore, the **EMPLOYEES AS INSUREDS** endorsement adds to **SECTION II – COVERED AUTOS LIABILITY COVERAGE, A. Coverage, 1. Who Is An Insured** that "[a]ny 'employee' of [RLC's] is an 'insured' while using a covered 'auto' [RLC doesn't] own, hire or borrow in [RLC's] business or [RLC's] personal affairs." Safety National reserves its right to decline to indemnify Birrittella under the Auto Policy in connection with the Lawsuit should Birrittella not qualify as an "insured" on the Auto Policy.

Punitive damages are sought in the SAC, and they are not insurable under the applicable state's law and/or as a matter of public policy. On that basis, Safety National reserves its right to decline to indemnify Birrittella under the Auto Policy for any and all punitive damages that may be awarded.

As stated above, given that Birrittella is entitled to choose counsel and wishes to continue to be defended by Cozen & O'Connor, Safety National will contact Chubb to discuss the sharing of Cozen & O'Connor's reasonable and necessary legal fees and expenses.[8] Safety National reserves its rights to limit or further limit its participation in Birrittella's defense, and to disclaim a duty to defend Birrittella and terminate its defense of Birrittella under the Auto Policy, based on one or more of the "Other Insurance" clauses or provisions of the Auto Policy and/or any insurer agreeing to pay, and/or being held or found to have an obligation to pay, all or a portion of the reasonable and necessary costs and expenses of Birrittella's defense.

### DECLINATION OF COVERAGE UNDER THE GL POLICY

Pursuant to the **NEW YORK CHANGES – COMMERCIAL GENERAL LIABILITY COVERAGE FORM**, paragraph **1. Insuring Agreement** of Section I - **Coverage A Bodily Injury And Property Damage Liability** provides, in part, that Safety National will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Birrittella is not a Named Insured, and she may not qualify as an "insured," on the GL Policy. Under the GL Policy, "insured" means any person or organization qualifying as such under Section **II** – Who Is an Insured. As to **SECTION II – WHO IS AN INSURED, 1.**, only subparagraph **d.** is potentially applicable. It provides that if the Named Insured is designated in the Declarations as an organization other than a partnership, joint venture or limited liability company, it is an insured, and its "executive officers" and directors are insureds, but only with respect to their duties as RLC's officers or directors. "Executive officer" is defined by the GL Policy as "a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document." **SECTION V – DEFINITIONS, 6.** Furthermore, with certain exceptions that do not apply here, the GL Policy precludes coverage for "bodily injury" and "property damage" arising out of the ownership, maintenance, use or entrustment to others of any … "auto" … owned or operated by or rented or loaned to any insured.

---

[8] As stated above, Safety National's defense obligation is limited to the provision of a defense by a single firm.

FILED: NEW YORK COUNTY CLERK 10/16/2019 01:24 PM
Case 1:19-cv-10678-JSR  Document 1-1  Filed 11/18/19  Page 55 of 59  INDEX NO. 160054/2019

NYSCEF DOC. NO. 4                                                    RECEIVED NYSCEF: 10/16/2019

*See* **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g. Aircraft, Auto Or Watercraft** (the "Auto Exclusion"). By its own terms, the Auto Exclusion "applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft that is owned or operated by or rented or loaned to any insured." Accordingly, Safety National declines coverage to Birrittella under the GL Policy because she is not a Named Insured on the policy and either does not qualify as an "insured" on the policy or coverage is excluded under the policy by the Auto Exclusion.

Furthermore, punitive damages are sought in the SAC, and they are not insurable under the applicable state's law and/or as a matter of public policy. On that additional basis, Safety National declines to indemnify Birrittella under the GL Policy for any and all punitive damages that may be awarded.

\*\*\*\*

Safety National reserves its right to file a declaratory judgment action seeking declarations regarding the parties' respective rights and obligations under the Auto Policy and/or the GL Policy. Moreover, there may be additional or other policy terms, conditions and exclusions that operate to limit or preclude coverage for this matter, in whole or in part, and the above discussed grounds for reservation and denial are not necessarily exhaustive. Safety National hereby reserves all rights, defenses and remedies under the applicable law and all policies of insurance issued to RLC by Safety National. This correspondence should in no way be construed as in any way amending or revising any of the provisions of the Policies. Nothing herein shall serve to limit, prejudice or estop Safety National in any way.

Should you have any questions or wish to discuss this correspondence or the positions taken herein, or if there is any additional information you wish to bring to Safety National's attention, please feel free to contact me at John.Dodgen@SafetyNational.com or 314.810.5679.

Sincerely,

John Dodgen
Claims Manager - Liability

Cc:    aib@robinsonbrog.com

       jmcdonough@cozen.com
       rbevans@cozen.com

       Jonathan.Shiffman@ralphlauren.com
       Sana.Suhall@lewisbrisbois.com

       James.Dorion@willistowerswatson.com

**Via Email and Certified Mail**:
APG@GodoskyGentile.com
Anthony P. Gentile, Esq.
Godisky & Gentile, P.C.
61 Broadway, 29th Floor
New York, New York 10006

Case 1:19-cv-10678-JSR Document 1-1 Filed 11/18/19 Page 57 of 59
INDEX NO. 160054/2019
NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 10/16/2019

# EXHIBIT C

Chubb North American Claims
PO Box 5113
Scranton, PA 18505-0530

O (201) 356.5128
F (201) 356.5296
E jennifer.giaimo@chubb.com

October 15, 2019

*Via E-Mail
(apollack@wbny.com) and
Certified Mail*

Alan M. Pollack, Esq.
Warshaw Burstein, LLP
575 Lexington Avenue
New York, New York 10022

**CHUBB**

RE:   *Alaverdi v. Huey Bui et al.*
New York County Index No. 159549/2017
Claim No:      KY18K2113738
Policy:        G27983753 002 (05/10/2017-05/10/2018)
Date of Loss:  July 20, 2017
Claimant:      Loura Alaverdi

Dear Mr. Pollack,

Chubb North American Claims ("Chubb North American") is handling the above matter on behalf of ACE Property and Casualty Insurance Company (herein "Chubb"), which issued ACE Umbrella Plus Commercial Umbrella Liability Policy No. G27983753 002 to Ralph Lauren Corporation ("Ralph Lauren") for the policy period from May 10, 2017 to May 10, 2018 (the "Umbrella Policy").

We are writing in response to your letter dated September 18, 2019, with respect to the lawsuit captioned *Loura Alaverdi v. Huey Bui, Jenny Ymoui Chev, Roseann Birrittella and Ralph Lauren Corporation*, pending in the Supreme Court of the State of New York, County of New York, Index No. 159549/2017 (the "Underlying Action"), and to supplement our prior letter dated June 21, 2019, which explained Chubb's coverage position to Ms. Roseann Birrittella. This letter does not replace or supersede Chubb's prior position letter, and the coverage positions expressed therein are incorporated in this letter.

We have reviewed the "Second Amended Verified Complaint" ("Am. Compl.") in the Underlying Action. As explained below, Chubb is reserving all rights under the Umbrella Policy for the Am. Compl., including the right to reiterate its prior denial of coverage, because it remains apparent that Ms. Birrittella is not an insured under the Policy.

<u>Analysis of Coverage Relevant to the Am. Compl.</u>

In the Am. Compl., the plaintiff Loura Alaverdi alleges that Ralph Lauren afforded Ms. Birrittella with driving services to use in the course and scope of Ms. Birrittella's employment with Ralph Lauren, which services were provided by defendant Huey Bui. The plaintiff further alleges that being driven from Ralph Lauren's offices to Ms. Birrittella's home was determined by her and Ralph Lauren to be within the scope of Ms. Birrittella's duties and employment for Ralph Lauren. Moreover, Ms. Birrittella and Ralph Lauren allegedly had determined that hiring, employing, and controlling Bui to drive her from home to Ralph Lauren locations, and being compensated for the engagement of Bui, was within the scope of Ms. Birrittella's employment and duties from 2003 to 2017.

As explained in Chubb's prior coverage position letter, the Umbrella Policy follows the terms, definitions, conditions and exclusions of the Business Auto Policy issued to Ralph Lauren by Safety National Casualty Corp. (the "Auto Policy").

Section II of the Auto Policy, "Covered Autos Liability Coverage," sets forth who is covered by the Policy under Subsection 1, "Who Is An Insured." In the Am. Compl., there still is no allegation that Ralph Lauren owned, hired, or borrowed the vehicle that struck Alaverdi.

With respect to the Auto Policy endorsement titled "Employees as Insureds" – which broadens "Who Is An Insured" to include any employee of Ralph Lauren while using a covered auto that Ralph Lauren does not own, hire, or borrow, which use must be in Ralph Lauren's business or personal affairs – it still may not afford coverage because there has not been a determination that Ms. Birrittella was, in fact, in the course and scope of her employment while being driven home at the time of the accident.

<u>Additional Information and/or Coverage Issues</u>

As explained in Chubb's prior position letter, there may be additional policy provisions that apply to the

1

Case 1:19-cv-10678-JSB   Document 1-1   Filed 11/18/19   Page 59 of 59

Underlying Action, including without limitation Section II, "Who Is An Insured." In addition, as noted in the letter from Safety National Casualty Corporation dated October 10, 2019, commercial general liability coverage is not available due to the auto exclusion. Otherwise, this letter addresses only those provisions that appear pertinent at this time in light of the facts currently known and available to us, without accepting or implying that the allegations have any factual or legal merit. If there is any additional information that may affect Chubb's position or analysis, please forward such information.

Chubb continues to reserve all rights, remedies, and defenses under the Umbrella Policy, at law, and in equity. These reservations include, but are not limited to, the right to amend this letter to address additional coverage issues as they may arise, based upon the Umbrella Policy and/or any additional facts that may come to Chubb's attention. Nothing contained in this letter, and no action on our part in investigating these matters, should be construed as an admission of coverage or as a waiver of any right, remedy, or defense that may be available to Chubb.

We hope this letter was helpful in identifying the coverage issues relating to the Underlying Action. If you have any questions, however, or disagree with any aspect of the coverage position, please do not hesitate to contact the undersigned.

CHUBB®

Sincerely yours,

Jennifer Giaimo

Jennifer Giaimo
Senior Claims Director
Excess Casualty Claims
Chubb North American Claims

cc:     James.Dorion@willistowerswatson.com
        Jonathan.Shiffman@ralphlauren.com
        aib@robinsonbrog.com
        Sana.Suhail@lewisbrisbois.com

        Anthony P. Gentile, Esq.
        Godosky & Gentile, P.C.
        61 Broadway, 20th Floor
        New York, New York 10006
        Via E-mail and certified mail
        apg@godoskygentile.com